IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

MCS INDUSTRIES, INC.,

No. 26-00826

U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,

## COMPLAINT

1. Plaintiff, MCS Industries, Inc., ("MCS or "Plaintiff"), is a U.S.-based importer of merchandise subject to the duties challenged herein.

2. Beginning in February 2025, through a series of executive orders, the President of the United States invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA Duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff is the importer of record for merchandise subject to the IEEPA Duties and is responsible for paying these tariffs on its imported goods. To date, Plaintiff has done so.

3. IEEPA does not authorize these tariffs. This Court and the U.S. Court of Appeals for the Federal Circuit have already so held. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

4. Through this action, Plaintiff asks the Court to hold that for the merchandise imported by Plaintiff, the IEEPA Duties imposed by Defendant and the underlying executive orders that directed them are unlawful, as it held in *V.O.S. Selections*.

5. The U.S. Supreme Court heard oral argument in *V.O.S. Selections* and a companion case arising out of the U.S. District Court for the District of Columbia[1] on November 5, 2025, and is expected to decide both cases in the near future.

6. This separate action is necessary because even if the IEEPA Duties and underlying executive orders are held unlawful by the Supreme Court, importers that have paid IEEPA Duties, including Plaintiff, are not guaranteed a refund for those unlawfully collected tariffs in the absence of a specific judgment from this Court.

7. Accordingly, for itself, Plaintiff seeks: (i) a declaration that the IEEPA Duties are unlawful; (ii) an injunction preventing Defendants from imposing further duties on Plaintiff under the executive orders challenged in this lawsuit; and (iii) a full refund from Defendants of all IEEPA Duties Plaintiff has already paid to the United States as a result of the executive orders challenged in this lawsuit, as well as those it will continue to pay.[2]

## PARTIES

8. Plaintiff, MCS Industries, Inc., is a U.S. company incorporated in the Commonwealth of Pennsylvania.

9. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is

---

[1] *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).

[2] Plaintiff recognizes that this case will likely be automatically stayed pursuant to Administrative Order 25-02 issued by this Court. U.S. Ct. Int'l Trade, Admin. Order No. 25-02, *In re Procedures for Entering a Stay in New IEEPA Tariff Cases* (Dec. 23, 2025).

responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

11. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

12. Defendants are referred to collectively in this complaint as "CBP."

## JURISDICTION

13. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th at 1334.

14. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

15. Plaintiff has standing to bring this lawsuit because it is an importer of record for goods imported into the United States from countries subject to the unlawful IEEPA Duties as implemented and collected by CBP. As a result of the executive orders challenged by this lawsuit, Plaintiff has paid IEEPA Duties to the United States and thus has suffered injury caused by those orders. Declaratory and injunctive relief from this Court would redress those injuries. Plaintiff also faces imminent and irreparable harm due to uncertainty as to whether Defendants will issue refunds of the IEEPA Duties as to liquidated entries.

**GENERAL PLEADINGS**

**I.     The President orders a series of tariffs, invoking IEEPA for his authority.**

16.     On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China.[3] Each executive order was premised on IEEPA authorizing the tariffs. Collectively, these are referred to in this complaint as the "Trafficking Tariff Orders." For each set of tariffs, the President claimed that they were justified under IEEPA because of a purported national emergency.

17.     On February 5, 2025, the President modified the China Trafficking Tariff Order through Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025) ("February 5 Amendment").

18.     On March 3, 2025, the President amended the China Trafficking Tariff Order again through Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025) ("March 3 Amendment").

19.     On April 2, 2025, contending that trade deficits constitute a separate national emergency, President Trump issued Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("Reciprocal Tariff Order"). The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports into the United States,

---

[3] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

4

effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id*. at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id*.

20. The Reciprocal Tariff Order asserts that "U.S. trading partners' economic policies . . . suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *See* Reciprocal Tariff Order.

21. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. Exec. Order No. 14259*, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

22. The next day, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025). Meanwhile, the 20% trafficking tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

23. In implementing this Executive-Order-based tariff regime, the President directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS"), requiring that goods subject to the challenged tariffs be entered under new tariff codes.

24. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, *et al. v. Trump*, No. 25-cv-00066 (Ct. Int'l Trade 2025). As discussed below, this Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed.

25. In the months since the *V.O.S. Selections* complaint was filed, the President has issued additional executive orders imposing additional tariffs and modifying others. As explained below, IEEPA does not authorize the President to impose tariffs. By this complaint, however, Plaintiff challenges only those orders that the Federal Circuit has already held to be unlawful ("Challenged Tariff Orders").

**II.   CBP implements the unlawful tariffs.**

26. CBP is charged with the assessment and collection of duties, including the IEEPA Duties. *See* 19 U.S.C. §§ 1500, 1502.

27. When goods enter the United States, CBP is responsible for classifying merchandise, and then assessing and collecting any tariffs on the imported goods based on the tariff classification of the goods, according to the rates established by the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

28. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 637 F. Supp. 2d 1218, 1225 (Ct. Int'l Trade 2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

29. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin, and HTSUS classification for the imported goods. *See* 19 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

30. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

31. Once the final duty is determined by CBP, CBP "liquidates" the entry. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1. CBP then notifies the importer of record as to whether the importer owes more money or is entitled to a refund.

32. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, liquidation is done automatically by operation of law. CBP tries to liquidate duties 314 days after the date of entry of the goods and typically posts a notice on its website.

33. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

34. Once liquidation has occurred, and *if* the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking the CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514.[2] Not all liquidations are protestable; where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

35. This Court has held that since CBP's collection of such duties is purely ministerial, a § 1581(a) protest of a liquidation of an entry subject to IEEPA Duties would be futile. *See AGS Company Automotive Solutions et. al v. U.S. Customs and Border Protection, et al.*, No. 25-00255 (Slip Op. 25-154), at 7 ("In such a case, a § 1581(a) protest would be futile because 'all that Customs is authorized to do is collect the' duty") (citation omitted).

36. This Court possesses the equitable authority to suspend liquidation. *See, e.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021). This Court also possesses the ability to order reliquidation. *Id.* at 1363.

### III.     IEEPA does not authorize tariffs.

37.     The Challenged Tariff Orders cite IEEPA, 50 U.S.C. §§ 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. §§ 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

38.     These statutes do not authorize the President to impose tariffs. Of these, it is IEEPA alone that the President and CBP lean on to impose and collect the IEEPA Duties.

39.     Yet IEEPA does not authorize what the Challenged Tariff Orders seek to impose. IEEPA grants the President certain powers, but they "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

40.     Those powers include the ability to "investigate, regulate, or prohibit" certain transactions in foreign exchange, payments through banks involving foreign countries or nationals, or imports of "currency or securities." 50 U.S.C. § 1702 (a)(1)(A).

41.     The President may also control, block, or prohibit the movement or importation of funds or property in which "any foreign country" or foreign national has "interest" in, and which is also subject to the U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(B).

42.     Finally, and only when the United States is engaged in "armed hostilities" or has been attacked by a foreign country, the President may "confiscate" property of such a foreign country or person that is subject to U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(C).

43.     The text of IEEPA does not use the word "tariff" or "duties" or any term of equivalent meaning.

44.     IEEPA was first enacted in 1977 and has been amended several times, but it has never been amended to authorize, or used by any other President to impose, tariffs.

45.     On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA Duties at issue in that case.

46.     That decision was appealed to the Federal Circuit, which initially stayed this Court's decision.

47.     Sitting *en banc*, on August 29, 2025, the Federal Circuit affirmed this Court's decision that the IEEPA Duties are unlawful. See *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted.*

48.     In a separate lawsuit filed by a different group of importers, the U.S. District Court for the District of Columbia also held that IEEPA does not authorize tariffs of any sort. See *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the U.S. Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with argument before the Supreme Court held on November 5, 2025.

**IV.     Plaintiff has paid preliminary IEEPA Duties.**

49.     As of the date of this complaint, Plaintiff has paid IEEPA Duties imposed by the Challenged Tariff Orders.

50.     Plaintiff's imports subject to IEEPA entered the United States under new HTSUS codes from foreign countries.

51.     Plaintiff has paid IEEPA Duties on a continuous basis.

52.     On December 19, 2025, Plaintiff inquired with CBP on extending liquidations due to potential IEEPA refunds. On December 31, 2025, CBP responded that it "is not extending liquidations for the mentioned circumstances".

## STATEMENT OF CLAIMS

## COUNT I

### (THE CHALLENGED TARIFF ORDERS ARE ULTRA VIRES)

53. Plaintiff incorporates paragraphs 1-52 above by reference.

54. This Court in *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), held that the President exceeded his authority under IEEPA, 50 U.S.C. §§ 1701 *et seq.,* when he imposed tariffs on imported goods.

55. As this Court explained in *V.O.S. Selections*, IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions in times of national emergency. IEEPA does not authorize the imposition of tariffs or duties on imports. Neither the text of IEEPA nor its legislative history delegates, or indicates any Congressional intent to delegate, to the President the authority to set tariff rates.

56. The Federal Circuit affirmed that interpretation, holding that Congress did not clearly delegate to the President the authority to impose tariffs under IEEPA. The Federal Circuit stated that reading IEEPA to permit such authority would raise grave constitutional concerns, including under the major questions and non-delegation doctrines.

57. The Challenged Tariff Orders are the same as those struck down in *V.O.S. Selections*. They purport to impose duties and modify the HTSUS solely under IEEPA. For the reasons set forth in *V.O.S. Selections*, those Challenged Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio,* and without effect as applied to Plaintiff.

58. Plaintiff respectfully requests that this Court follow the binding precedent of the Federal Circuit, declare the Challenged Tariff Orders unlawful as to Plaintiff, enjoin Defendants

from enforcing them as to Plaintiff, and order the refund of all IEEPA Duties collected from Plaintiff, with interest as provided by law.

## COUNT II

### (ALTERNATIVE – THE CHALLENGED ORDERS ARE UNCONSTITUTIONAL)

59. Plaintiff incorporates paragraphs 1-58 above by reference.

60. In the alternative, if this Court were to construe IEEPA as authorizing tariffs, the IEEPA Tariff Orders must nevertheless be held unlawful because IEEPA in that event would constitute an impermissible delegation of legislative power from Congress to the President.

61. The United States Constitution vests in Congress exclusively the power to "lay and collect . . . Duties." U.S. CONST. art. I, § 8, cl. 1.

62. The IEEPA does not delegate Congress's tariff power to the President.

63. Plaintiff therefore seeks a declaration that the IEEPA Tariff Orders are unconstitutional as to Plaintiff and asks the Court to enjoin Defendants from enforcing them as to Plaintiff and order the refund of all IEEPA Duties collected from Plaintiff, with interest as provided by law.

## COUNT III

### (DECLARATORY RELIEF, 28 U.S.C. § 2201)

64. Plaintiff incorporates paragraphs 1-63 above by reference.

65. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

66. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

67. Plaintiff is an importer of record and has suffered injury by being required to pay IEEPA Duties as a result of the Challenged Tariff Orders on goods it has imported into the United States.

68. Liquidation has commenced for entries reflecting unlawful duties. Plaintiff formally requested that CBP extend liquidation for Plaintiff's relevant entries, but CBP denied Plaintiff's request.

69. This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful for any of the above reasons, and that CBP lacks authority to implement and collect the resulting tariffs, as to Plaintiff.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

a) declare that the President lacks authority under IEEPA to set tariffs;

b) declare that the Challenged Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

c) declare that, with respect to Plaintiff, CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

d) with respect to Plaintiff, enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

e) order CBP to reliquidate any such entries that have been processed through final liquidation;

f) order the United States to refund to Plaintiff the IEEPA Duties collected on those entries, with interest as provided by law;

g) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

    h)    grant such further relief as this Court deems proper.

                                      Respectfully submitted,

Dated: January 23, 2026                HUTH REYNOLDS LLP

                                      /s/ J. Zachery Morris
                                      J. Zachery Morris
                                      (332) 203-4571
                                      zmorris@huthreynolds.com
                                      Sahana Thirumazhusai
                                      (admission pending)
                                      (703) 307-3822
                                      sthirumazhusai@huthreynolds.com
                                      41 Cannon Court
                                      Huntington, NY 11743

                                      *Counsel for Plaintiff*